**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

VINCENT E. BOICE,

                              Plaintiff,

          v.                                        No. 14-CV-505
                                                    (GTS/CFH)

M+W U.S., INC., TOTAL FACILITY
SOLUTIONS, and M+W ZANDER
NY ARCHITECTS, P.C.,

                              Defendants.

_____

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                    **OF COUNSEL:**

Cooper, Erving Law Firm              CARLO ALEXANDRE C. DE OLIVERIA, ESQ.
39 North Pearl Street, 4th Fl.       PHILLIP G. STECK, ESQ.
Albany, New York 12207
Attorneys for Plaintiff

Jackson, Lewis P.C.                  PETER M. TORNCELLO, ESQ.
18 Corporate Woods Blvd.             STEPHANIE L. GOUTOS, ESQ.
Albany, New York 12211               WILLIAM J. ANTHONY, ESQ.
Attorneys for Defendants

### REPORT-RECOMMENDATION AND ORDER[1]

          Plaintiff, Vincent E. Boice, commenced this action on April 30, 2014, alleging that

defendants M+W U.S., Inc, Total Facility Solutions, Inc., and M+W Zander NY Architects,

P.C. (collectively, "defendants," where appropriate) violated the Fair Labor Standards Act

_____

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28
U.S.C. § 636 (b) and N.D.N.Y.L.R. 72.3 (c).

("FLSA"), 29 U.S.C. § 216(b), and New York Labor Law § 650 *et seq.* through their failure to pay required overtime compensation. <u>See</u> Dkt. No. 25 ("Am. Compl."). Presently pending are plaintiff's motions to compel discovery (Dkt. No. 29) and to conditionally certify this matter as a collective action pursuant to the FLSA (Dkt. No. 34). Also pending is defendants' motion to strike the declaration of plaintiff's counsel, Carlo A.C. de Oliveria given in support of plaintiff's motion for conditional certification ("de Oliveria declaration"). Dkt. No. 40. Defendants opposed the motion to compel (Dkt. No. 33) and the motion to conditionally certify (Dkt. No. 39). Plaintiff opposed the motion to strike the de Oliveria declaration. Dkt. No. 40. For the following reasons, it is recommended that defendants' motion to strike the de Oliveria declaration be denied (Dkt. No. 40); plaintiff's motion to conditionally certify be denied, without prejudice (Dkt. No. 34); and plaintiff's motion to compel discovery be granted in part (Dkt. No. 29).

## I. **Background**

Defendant Total Facility Solutions, Inc. has a principal place of business in Plano, Texas, and defendant M+W Zander NY Architects P.C. is a domestic corporation authorized to do business in New York. Dkt. No. 28 at 2-3. M+W U.S., Inc. is the successor company to M+W Zander U.S. Operations. Dkt. No. 28 at 3. Defendants provide engineering and related services to industries in and out of New York State. <u>Id.</u> at 4. Plaintiff was employed by M+W Zander NY Architects P.C. as a structural designer in its Watervliet, New York regional office from December 15, 2008 to December 3, 2013. Dkt. No. 29-12 at 1. Plaintiff does not hold any advanced degrees, but holds a Certificate Program in Drafting from

Hudson Valley Community College. Id. at 1-2. Plaintiff's job as a structural designer involved using a computer aided drafting ("CAD") program to "prepar[e] and revis[e] plans layouts, detail drawings, and diagrams"; and "coordinate[] printing (plotting) of Structural drawings with the printing of other disciplines [sic] drawings as directed by the CAD Coordinators." Id. at 2-3. Plaintiff was "not required to have any advanced degree other than [his] drafting certification in order to perform these drafting functions." Id. at 2-3. according to plaintiff, he "did not have any authority nor was [he] allowed to make any relevant decisions regarding design, development, documentation, analysis, testing or modification of the CAD software program [he] used in performing [his duties]." Dkt. No. 29-12, at 3. His final product "needed to be approved by [his] supervisor, lead engineer and/or architect. [He] was also supposed to follow corporate drafting standards when creating the CAD design." Id. at 3-4. Plaintiff did not have the authority to evaluate, hire, or fire others. Id. at 4.

Plaintiff commenced this action, arguing that defendants wilfully failed to pay him, and others similarly situated to him, overtime of one and one-half his regular rate of pay, instead paying them "straight time" – their regular rate of pay – for hours worked in excess of forty hours per week, in violation of the FLSA. Dkt. No. 1, Dkt. No. 25.

## II. Discussion

### A. Motion to Strike

Defendants move to strike paragraphs 5, 7, 9, 10, 12, 15, and 17 of the de Oliveira declaration (Dkt. No. 34-2) filed in support of plaintiff's motion for conditional certification.

Dkt. No. 40.   Defendants allege that the de Oliveria declaration "fails to conform to the requirements of Fed. R. Civ. P. 56(c)(4)[2] regarding the content and admissibility of attorney declarations – and, therefore, the specified paragraphs should be disregarded, in whole or in part."  Dkt. No. 40-1, at 3.  Specifically, defendants argue that de Oliveria lacks the personal knowledge of job duties of designers and omits certain duties or functions of designers contained in the job descriptions.  Id. at 5-6.  Defendants further provide that, "[w]hile 56 generally applies to summary judgment, Rule 56 requirements apply to declarations submitted in support of any motion."  Dkt. No. 40-1, at 4.  Plaintiff opposes, contending that Rule 56(c)(4), which is the standard governing evidentiary submissions on a motion for summary judgment" does not apply to a motion for preliminary certification.  Dkt. No. 43, at 1.

In support of their motion to strike, defendants cite several cases arising on motions for summary judgment.  To support their contention that the requirements of Rule 56 "apply to declarations submitted in support of any motion," defendants refer to Kamen v. American Tel. & Tel. Co., 791 F.2d 1006 (2d Cir. 1986), without a pin cite. However, the Court has reviewed this case, which was before the Second Circuit to review a grant of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), and is not certain how it supports defendants' position that the standards of Rule 56(c)(4) apply to attorney declarations submitted in support of a motion for conditional certification.  To the extent that defendants wish the Court to extrapolate the fact that,

---

[2]  Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  FED. R. CIV. P. 56(c) (4).

because the Court in <u>Kamen</u> concluded that "Rule 56 is relevant to the jurisdictional challenge in that the body of decisions under rule 56 offers guidelines in considering evidence outside of the pleadings," the case supports applying Rule 56(c)(4) standards to other motions, the Court does not agree with this broad reading. Even if the Court agreed that <u>Kamen</u> stands for the fact that the pleading requirements of Rule 56 may be applied to attorney affidavits submitted in support of a 12(b)(1) or 12(b)(6) motion, the Court is not prepared to conclude that the rationale set forth in <u>Kamen</u> also applies to attorney declarations in support of motions to conditionally certify a class.

Regardless of <u>Kamen</u>'s relevance, "the Court notes that it is in the Court's discretion to determine the weight to assign to the various declarations." <u>Sharma v. Burberry Ltd.</u>, 52 F. Supp. 3d 443, 2014 WL 4385426, at *9 (E.D.N.Y. 2014) (citing <u>Trinidad v. Pret a Manger (USA) Ltd.</u>, 962 F. Supp. 2d 397, 403 (S.D.N.Y. 2012) (additional citations omitted). Insofar as defendants are concerned with counsel's recitation of the job descriptions in the de Oliveria declaration, the Court is capable of both assessing the credibility of de Oliveria's descriptions and reviewing and assessing defendants' job descriptions, which were provided as exhibits to the disputed declaration. <u>See</u> Dkt. No. 34-2. Furthermore, the undersigned notes that evidence submitted for the purpose of certification need not be admissible. <u>See generally</u> <u>Allbaugh v. California Field Ironworkers Pension Trust</u>, 12-CV-561 (JAD/GWF), 2014 WL 2112934, at *7 (D. Nevada May 20, 2014); <u>Jeseik v. Fire Pros, Inc.</u>, 275 F.R.D. 242 (W.D. Mich., S. Div. May 2011) ("A conditional certification motion does not seek final disposition of the action on the merits, unlike a summary judgment motion, and therefore requiring all evidence for consideration to be admissible has no logical basis.") (citations omitted).

Accordingly, it is recommended that defendants' motion to strike the de Oliveria declaration be denied.

### B. **Motion for Conditional Collective Action Certification**

### 1. **Plaintiff's Arguments**

Plaintiff moves for an Order, pursuant to 29 U.S.C. § 216(b) of the FLSA, conditionally certifying a class of all of defendants' current and former employees employed as

> "Designers" (Structural, Architectural, Mechanical, Electrical and Process) or in a position with comparable work duties, during the three-year period preceding the court's certification order, whose duties included the operation of computer aided drafting program ("CAD") to create structural models, drawings, and/or designs and, who were not paid overtime for hours worked in excess of 40 hours in a work week at the rate of one and one-half time [sic] their regular rate of pay.

Dkt. No. 34-1 at 1-2 (some formatting omitted).  He also requests that the Court authorize judicial notice to all class members and order defendants to produce the names, last known addresses, last known telephone numbers, e-mail addresses, and the final four digits of social security numbers of all putative class members for the last three years.  Id. at 2, 8-9.

Plaintiff essentially argues that conditional certification should be granted because (1) all of the designers in the potential class had substantially similar job duties, and (2) all of the designers in the potential class worked in excess of forty hours a week without receiving overtime of time and one half of their regular salary.  Dkt. No. 29-12, at 2.  In support of his motion for conditional class certification, plaintiff submits his own

-6-

affidavit setting forth these arguments. Dkt. No. 29-12. Specifically, plaintiff contends that the potential class of designers are similarly situated because all designers had similar job duties, regardless of "the discipline in which each designer was assigned to perform his or her duties." Dkt. No. 34-1, at 3. Plaintiff provides that all designers were "employed by the defendants to provide support to professional engineers and/or architects in different departments/disciplines such as structural, electrical, mechanical, architectural and process designs." Id. He further states that his duties and those of all designers were "notably the same" in that all designers used "various CAD applications to provide support to engineers by preparing and revising plans, layouts, detail drawings, and diagrams as a design project progressed." Id. at 2-4. Plaintiff also notes that none of the designers in the potential class had supervisory duties or responsibilities. Id. at 2. He argues that such work was not exempt under the FLSA. Id. at 6. Plaintiff requests that the potential class cover a three-year period prior to the date of any order granting conditional certification. Dkt. No. 34-1 at 2.

Plaintiff contends that he is aware of both the similarities between his position and those of other designers and the fact that other designers were also not properly paid because he "had an opportunity to interact with other structural designers, as well as designers working in other disciplines . . . who performed similar functions to the functions I was performing." Dkt. No. 29-12 at 1. Plaintiff asserts that he was friends with several other designers and "had conversations with them on various topics, including frustration with the way we were paid." Id. at 2. He is also aware of the job duties of other designers because his work for defendants "required extensive interaction between departments/ disciplines in order to coordinate locations of elements to avoid

interferences." Id. at 3.  Plaintiff's affidavit submits that, at the Watervliet and Malta regional offices, there were ten to twenty designers employed by defendants "at any given time."  Dkt. No. 29-12, at 2.  He also contends that, "to the best of [his] knowledge," defendants have offices in New York, Texas, Connecticut, Illinois, Georgia, Arizona, California, Oregon, and Massachusetts, and that defendants employ designers in these offices.  Id.  Plaintiff is aware of the similarities between the duties in the various designing jobs because his job required that he interact with other designers.  Id. at 1. Plaintiff also submits a declaration from counsel which provides defendants' job description for structural designers (Dkt. No. 34-2 at 8), mechanical designers (Dkt. No. 34-2 at 10), electrical designers (Dkt. No. 43-2 at 12), process designers (Dkt. No. 34-2 at 14), and Intern Architects (Dkt. No. 34-2 at 16).[3]  Plaintiff also submits, through his attorney's declaration (Dkt. No. 34-2), job descriptions for structural designers, mechanical designers, electrical designers, process designers, and intern architects.[4] Dkt. No. 34-2, at 8-16.  These descriptions include the work duties listed by plaintiff in his affidavit, in addition to a more detailed recitation.  Id.  Plaintiff also provides "initial disclosures" which includes a list of "individuals . . . likely to have discoverable information."  Dkt. No. 34-2, at 20.  This list includes names or partial names of thirteen

---

[3]  Also appended to the declaration is an e-mail from Paul Beazer, apparently a former designer for defendants who became aware of this action, similarly had an "issue" with overtime pay while employed by defendants, and expressed interest in joining the action.  Dkt. No. 34-2 at 18.  However, plaintiff gives no indication (nor has he filed anything with the Court) that this individual has opted-in as a plaintiff in this action.

[4]  Defendants explain that, although there is a position "commonly referred" to as Architectural Designers, "there are no actual 'Architectural Designer' positions at M+W.  Rather, the Architectural Discipline is comprised of Architects and Architectural Interns."  Dkt. No. 39, at 5 n. 5 (citation omitted).

designers from the Watervliet or Malta, New York offices, as well as twenty-eight

additional designers employed in defendants' offices in Fishkill, New York; Albuquerque,

New Mexico; Boston, Massachusetts; Chicago, Illinois, Dallas, Texas; Phoenix, Arizona;

Portland, Oregon; and San Francisco, California. Id. at 21-22.


### 2. **Defendants' Arguments**

Defendants oppose this motion on the grounds that plaintiff: (1) failed to establish

a common policy, practice, or scheme; (2) is not similarly situated to members of the

potential class; and (3) was employed in a position exempt from the FLSA. See Dkt. No.

39. In the alternate, defendants argue that, even if conditional certification were granted,

the scope of the proposed class is overly broad. Id. at 24-25.

Defendants argue that plaintiff "has failed to identify the existence of an unlawful

common policy, practice, or scheme . . . ." Dkt. No. 39 at 3, 11. Defendants contend that

designers are not classified in the same way and are subject to differing compensation

policies. Id. at 11. They contend that some designers are nonexempt employees who

are paid time and one half for hours worked in excess of forty hours per week, other are

exempt employees who are paid a fixed salary plus premium pay for hours worked over

forty per week, some are paid a salary without premium pay, still others are paid over

$100,000 annually. Id. at 11 n.9. Defendants further argue that plaintiff did not receive

time and one-half because he was exempt from that requirement, and instead received

"Premium Pay for all hours in excess of [a] 40 [hour] per workweek [sic]." Dkt. No. 39, at

13. Thus, defendants contend that their method of paying plaintiff "greatly exceed[ed]

the [amount] he would have been owed under the FLSA" even if he was not exempt. Id.

Defendants further contend that the potential class members are not similarly situated because designers in other disciplines have "vastly" different job duties than plaintiff. Id. at 2, 11 n.9., 16. They point out that, even within each designer category, there are different levels within each discipline, which dictate the duties and responsibilities the designer may perform. Id. at 21. In support of this contention, defendants submit affidavits from Jose Rivas, the Vice President of Human Resources and General Manager at M+W, Inc. in Plano, Texas; Ken Toliver, Vice President and Director of Design Operations at M+W, U.S., Inc. in Plano, Texas; Ronald Day, Process Designer in Malta, New York; Gregory Mox, IT Security Designer, Extra Low Voltage Systems in Malta, New York; and Patrick McGinn, Mechanical Designer, in Malta, New York. See Dkt. Nos. 39-1, 39-2, 39-3, 39-4, 39-5.

Finally, defendants address deficiencies in plaintiff's job performance. Id. at 23-24. Defendants also point out that plaintiff's sole support of his motion for conditional certification is "his own self-serving, conclusory affidavit which demonstrates very little about his actual job duties performed when performing the various positions." Dkt. No. 39, at 4-5.

1. **Legal Standard**

Under the FLSA, "employers are required to compensate employees for all of the work performed, including overtime, in order to remedy 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for the health efficiency, and general well-being of workers.'" Bowens v. Atlantic Maintenance Corp., 546 F. Supp. 2d 55, 81-82 (E.D.N.Y. 2008) (citing 29 U.S.C. §§ 202(a), 207(a)(1)) (additional citation

omitted).  Specifically, the FLSA requires that employers pay employees one and

one-half times their normal rate of pay for working in excess of forty hours per week. 29

U.S.C. § 207(a)(1).  FLSA § 216(b) further provides that:

> an action . . . may be maintained against any employer
> . . . by any one or more employees for and in behalf of himself
> or themselves and other employees similarly situated.  No
> employee shall be a party plaintiff to any such action unless
> he gives his consent in writing to become such a party and
> such consent is filed in the court in which such action is
> brought.

29 U.S.C. § 216(b).

Certification of a collective action under section 216(b) "is only a preliminary

determination as to which potential plaintiffs may in fact be similarly situated." Bowens,

546 F. Supp. 2d at 81-82 (citation omitted).  In general, courts within this Circuit apply a

two-step test in determining whether to certify a case as a collective action under the

FLSA.  This test is explained thoroughly in Scholtisek v. Eldre Corporation:

> In the first step, the court examines the pleadings and affidavits of the
> proposed collective action and determines whether the proposed class
> members are similarly situated. If the court finds that the proposed class
> members are similarly situated, the court "conditionally certifies" the class.
> Putative class members are given notice and the opportunity to "opt in" and
> the action proceeds as a representative action throughout discovery.
> In this early phase, courts employ a relatively lenient evidentiary standard in
> determining whether a collective action is appropriate. At the notice stage,
> courts appear to require nothing more than substantial allegations that the
> putative class members were together the victims of a single decision,
> policy, or plan infected by discrimination. To demonstrate that other
> potential plaintiffs are similarly situated to him, then, a plaintiff must make
> only a modest factual showing sufficient to demonstrate that he and
> potential plaintiffs together were victims of a common policy or plan that
> violated the law. A plaintiff's burden at this stage is minimal, especially since
> the determination that potential plaintiffs are 'similarly situated' is merely a
> preliminary one.

The second phase of an FLSA collective action inquiry occurs after discovery is largely complete and is typically precipitated by a motion for "decertification" by the defendant. At this stage, the court makes a factual finding on the 'similarly situated' issue, based on the record produced through discovery. If the court finds that the claimants are similarly situated, the collective action may proceed to trial. If the claimants are not similarly situated, the court decertifies the class, and the claims of the opt-in plaintiffs are dismissed without prejudice. The class representatives then proceed to trial on their individual claims.

229 F.R.D. 381, 387 (W.D.N.Y. 2005) (internal citations and quotations omitted); see also Ruggles v. WellPoint, Inc., 591 F. Supp. 2d 150, 157-58 (N.D.N.Y. 2008) (citing Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 367-68 (S.D.N.Y. 2007)).

The FLSA does not define "similarly situated"; however, in assessing whether the potential plaintiff has met his or her burden, "district courts in this circuit look to the (1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class." Id. (quoting Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008) (internal quotation marks and additional citations omitted). A plaintiff's burden at the first step may be satisfied with "substantial allegations" of a factual nexus between named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation. See Cohen v. Gerson Lehrman Grp., Inc., 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010) (quoting Ayers v. SGS Control Servs., Inc., 03-CV-9078 (RMB/RLE), 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004)).

Thus, at this first step, a court is not to evaluate the merits. Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 174 (1989); Roebuck v. Hudson Valley Farms, Inc., 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002). Further, although the burden on the plaintiff at this

preliminary stage is modest, "it is not non-existent." Khan v. Airport Mgmt. Servs., LLC, No. 10-CV-7735, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011); Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010).

At the second step,

> following discovery, a court determines whether the "'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." If the plaintiffs are not similarly situated, then the collective action may be "de-certified" and "the opt-in plaintiffs' claims may be dismissed without prejudice."

Salomon v. Adderley Indus., Inc., 847 F. Supp. 2d 561, 564 (S.D.N.Y. 2012) (quoting Meyers v. Hertz Corp., 624 F.3d 537, 542 (2d Cir. 2010)). At this latter stage, courts apply a more "stringent standard" of proof to determine whether plaintiffs are similarly situated. See, e.g., Damassia v. Duane Reade, Inc., No. 04-CV-8819 (GEL), 2006 WL 2853971, at * 3 (S.D.N.Y. Oct. 5, 2006).


2.  **Analysis**

First, although defendants argue that they are not yet seeking to challenge plaintiff's FLSA claims on the merits (Dkt. No. 39, at 16 n.19), the undersigned concludes that the bulk of defendants' arguments ask the Court to do exactly that. As noted, defendants contend that plaintiff fails to meet his burden because, among other things, the potential plaintiffs had varying job duties and responsibilities, were subject to differing payment classifications, and because plaintiff was properly classified as exempt.

As repeatedly noted by courts in this Circuit, the relevant issue "is not whether Plaintiffs and [potential opt-in plaintiffs] were identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they

worked more than 40 hours per week." Salomon v. Adderley Industries, Inc., 847 F. Supp. 2d 561, 565 (S.D.N.Y. 2012) (citation omitted). Thus, the "similarly situated" assessment focuses on the features that make the policy or practice unlawful. Ruggles, 591 F. Supp. 2d at 157. Further, potential plaintiffs may be deemed similarly situated for the purpose of preliminary certification under the FLSA despite not occupying the same positions or performing the same job functions as long as they are subject to a common unlawful policy or practice. Id. at 160; Rudd v. T.L. Cannon Corp., 10-CV-0591 (TJM/DEP), 2011 WL 831446, at *9 (N.D.N.Y. Jan. 4, 2011) ("plaintiffs have made the requisite modest showing that they and other former employees . . . are similarly situated, notwithstanding the fact that they may have occupied different job descriptions . . . ."). Defendants' submission of five affidavits in support of its arguments that the potential class members are not similarly situated does not require a different conclusion here, as such claims are "best reserved for the second stage of the class analysis." Ruggles, 591 F. Supp. 2d at 161. Indeed, "[t]o balance the parties' competing affidavits at this stage would require us to determine the facts, determine credibility of deponents, and resolve legal contentions, all of which we are directed to avoid." Id. Such assessments would be premature at this stage. See id. at 159 n.10 (declining, at preliminary certification stage, to address the defendants' claims that the employees were not similarly situated because they had different pay classifications and concluding that determination of that issue would require "both a credibility determination and the need for discovery," which is not appropriate at the initial stage of the certification determination).

Defendants' argument that plaintiff has failed to demonstrate that he and the potential class were subject to a common policy is a closer question. Due to the fact-

and case-specific nature of the preliminary certification assessment pursuant to section 216(b), there is little consistency in the application of the preliminary certification between and within the districts in this Circuit.  The undersigned acknowledges that many cases have held that a "plaintiff is not required to indicate how many opt-in plaintiffs may join the suit, nor must a FLSA plaintiff join with other potential plaintiffs at the time a suit is filed in order for a representative action to be pre-certified."  Cuzco v. Orion Builders, Inc., 477 F. Supp. 2d 628, 634 (S.D.N.Y. 2007); Kemper v. Westbury Operating Corp., 12-CV-0985 (ADS/ETB), 2012 WL 4976122, at *2 (E.D.N.Y. Oct. 17, 2012) (collecting cases); Pefanis v. Westway Diner, Inc., 08-CV-2 (DLC), 2008 WL 4546526, at *1 (S.D.N.Y. Oct 8, 2006) ("The fact that no [other] employee has yet joined this action does not make notice [to the potential class] inappropriate.").  However, in many of the cases that have found a single plaintiff's affidavit sufficient to support preliminary certification, the court required more than "mere allegations" to support the plaintiff's claim that he and other employees were subject to a common policy or practice.  See Morales v. Plantworks, Inc., 05-CV-2349 (DC), 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006) (denying preliminary certification because, among other reasons, the only support for plaintiffs' claim that they were subject to a common policy of being denied overtime was claim complaint that there were "over 20 current and former employees that are similarly situated to Plaintiffs and have been denied minimum wage and overtime compensation while working for Defendants."); Prizmic v. Armour, Inc., 05-CV-2503, 2006 WL 1662614, at *3 (E.D.N.Y. June 12, 2006) (denying certification where the plaintiff "had not submitted any evidence by affidavit or otherwise to demonstrate that he and other potential plaintiffs were victims of a common policy or plan that violated the law"); cf. Wraga v. Marble Lite, Inc., 05-CV-

-15-

5038 (JG/RER), 2006 WL 2443554, at *2 (E.D.N.Y. Aug. 22, 2006) ("Courts routinely grant such motions based upon employee affidavits setting forth a defendant's plan or scheme not to pay overtime compensation and identifying by name similarly situated employees."); but see Doucoure v. Matlyn Food, Inc., 554 F. Supp. 2d 369, 373 (E.D.N.Y. 2008) (permitting preliminary certification where plaintiff offered his complaint which contended that he routinely worked in excess of forty hours per week, the defendant failed to pay him overtime, and there were similarly situated hourly employees also denied overtime).

In Zheng v. Good Fortune Supermarket, Inc., et al., in support of her motion for preliminary certification, the plaintiff offered her own declaration which stated that she "'observed that other supermarket clerks did work that was the same or similar to the work [she] did" and "other (unidentified) clerks 'were similarly compensated and worked similar schedules.'" 13-CV-60 (ILG), 2013 WL 5132023, at *2 (E.D.N.Y. Sept. 12, 2013). The declaration further provided that "'other supermarket clerks were subject to the same time shaving policy[,] [as she] . . . , and that she somehow 'observed that the time worked by employees was not accurately reflected by the time keeping system due to time shaving with respect to all supermarket clerks, including' plaintiff." Id. Addressing the plaintiff's argument that "courts have accepted a single declaration as a sufficient basis for conditional certification[,]" the court noted that, in one of cases the plaintiff cited, the defendant's discovery response conceded that they failed to keep records of the time worked and wages earned of the employees and, in the other, the plaintiff provided "personal knowledge and specific observations, coupled with an affidavit and statement from the manager" which "provided evidence of a 'standard and rigid tipping policy." Id.

at *5-*6.  The court criticized the plaintiff's generalized claims that she personally

observed violations of the time share policy and that other employees "informed her 'that

they suffered the same illegal policies,'" noting that the plaintiff "does not identify a single

fellow employee who so informed her [of being subjected to an illegal policy,]" nor did she

identify a source for her contentions that defendants failed to provide her coworkers with

proper pay stubs or other written notice of wages." Id. at *5.

Here, the support plaintiff offers to show the existence of a common policy or

scheme is nearly identical to that offered – and rejected by the court as insufficient – in

Zheng.  2013 WL 5132023, at *2 .  Although the undersigned recognized that the fairly

minimal burden for preliminary certification does not necessarily require submission of

affidavits from multiple employees, a plaintiff must still "provide more than the

uncorroborated statements of the single named Plaintiff to support the claim that there

are other workers who were similarly situated to the Plaintiff for the purposes of an FLSA

suit." Cuzco v. Orion Builders, Inc., 477 F. Supp. 2d 628 (S.D.N.Y. 2007) (allowing

preliminary certification but noting that, if all the court had to rely on was the plaintiff's

complaint and his declaration, such would not likely have provided a sufficient basis for

preliminary certification.).   Here, all that plaintiff has submitted to the Court in support of

his motion for preliminary certification is his complaint, his affidavit, and his attorney's

declaration, with general job descriptions attached.  Plaintiff's affidavit provides that he

> believe[s] that all other designers whose primary duties were
> the same or substantially similar to mine were subject to the
> same compensation policy that I was.  I know this because
> during the course of carrying out my duties I worked closely
> with the other Designers in various departments/disciplines
> and became friends with them.  As such I had conversations
> with them on various topics, including frustration with the way

we were paid.

Dkt. No. 29-12, at 2.   However, plaintiff fails to provide any detail regarding the conversations he had with these coworkers, such as the names or positions of these designers, the dates of these conversations, or any details surrounding the conversations.  See Sanchez v. JMP Ventures, L.L.C., 13-CV-7264 (KBF) 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014); cf. Wraga., 2006 WL 2443554, at *2 (granting preliminary certification where the plaintiff described specifics of conversations with other employees and named seven employees who appeared in the defendants' payroll records).  Plaintiff also fails to explain how he was aware that employees at defendants' other locations were subject to the same allegedly unlawful overtime compensation policy, despite only having worked at the Watervliet location.  See Rudd, 2011 WL 831446, at *9 (concluding that allegations of FLSA violations at one location did not provide sufficient factual support of similar wrongdoings at the defendants' other locations).  Indeed, the requirement that plaintiff and the potential class are similarly situated "cannot be satisfied simply by 'unsupported assertions.'" Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010) (quoting Dybach v. State of Fla. Dep't of Corr., 942 F.2d 1562, 1567 (11th Cir. 1991).  "The notice and opt-in process outlined by the FLSA is not a discovery device to determine whether conditional certification is appropriate.  More is required under the law, even at the first sage of the conditional certification process." Sanchez, 2014 WL 465542, at *2 (citing Myers, 624 F.3d at 555) (concluding that plaintiff's complaint and a "list of generalized allegations that have been molded into a declaration" . . . are "precisely the kind of unsupported assertions and conclusory allegations that courts in [the Southern] District have found to be insufficient to

-18-

conditionally certify a class under 216(b).").  The undersigned finds that plaintiff has failed to demonstrate that he and the potential class – all structural, architectural, process, and electrical designers at all of defendants' offices –  were subject to a common policy or practice of being denied overtime compensation in violation of the FLSA.

Accordingly, it is recommended that plaintiff's motion for preliminary certification pursuant to section 216(b) of the FLSA be denied, without prejudice, and with opportunity to renew, if and when discovery process – following the extension and continuation of discovery, discussed infra – yields additional facts and evidence that render such certification appropriate.  See Morales, 2006 WL 278154, at *3 (citing Wright, Miller, & Kane, 7B Federal Practice and Procedure § 1807, at 496-96 ("If conditional certification is denied, the court may allow discovery to provide plaintiffs a second opportunity to obtain sufficient evidence of a collective to warrant conditional certification and the notice to opt in.")) .[5]

### C.  **Motion to Compel**

Plaintiffs move for an order compelling defendants to produce documents responsive to plaintiff's discovery requests relevant to both their FLSA and Rule 23 claims.  Dkt. No. 29-11.  Plaintiff requested, among other things, (1) the identity of all employees employed by defendants as structural, architectural, mechanical, and electrical designers six years before April 20, 2014, the commencement of this action;

---

[5]  As the undersigned recommends a denial of plaintiff's motion to preliminarily certify the proposed class, the Court need not consider at this time the adequacy of plaintiff's proposed notice. However, in the event that the District Judge adopts these findings and, thereafter, plaintiff chooses to file a renewed motion for conditional class certification, it is recommended that the parties attempt to reach a consensus on the language of the notice.

(2) the method and rate of compensation of all designers employed by defendants six years before April 20, 2014; (3) identification of overtime exemptions, exclusions, exceptions that plaintiff and the potential class members fall under pursuant to the FLSA, as alleged by defendants' affirmative defenses; (4) duties of designers that included independent authority to hire, fire, or discipline other employees; (5) the offers of employment letters, job descriptions, method/amount of compensation, and any benefits provided to designers and others in potential class; (6) all evidence defendants intend to rely on at trial to support it's answer that plaintiff was paid correctly; (7) detailed information regarding the method used by defendants to pay overtime to plaintiff and potential class for six years before April 20, 2014; (8) whether plaintiff's hours fluctuated from week to week and identification of weeks where plaintiff worked fewer than forty hours in a work week, the reasons for why plaintiff worked fewer than forty hours in a work week, and compensation plaintiff received when he worked fewer than forty hours in a work week; (9) how plaintiff was compensated when he worked during unscheduled or holiday time; (10) copies of all bank records, including checks, for all designers in the potential class for six years before April 20, 2014; (11) all schedules of designers for six years before April 20, 2014; (12) "all documents, correspondence, notes and/or memoranda, including e-mail, computer files, back-up tapes, computer event logs, or other electronic medial, reflecting the dates, times and attendance records of employees employed as" designers for six years before April 20, 2014"; (13) all offers of employment letters, job descriptions, employee manuals, M+W U.S. policies mailed to designers for six years before April 20, 2014; and (14) all documents relating to the "status classification" of all designers "as exempt employees."  Dkt. No. 29-11, at 1-19.

Defendants object, contending that plaintiff's requests, prior to certification, are "premature, excessive, and unduly burdensome." Dkt. No. 33, at 2. Defendants further provide that they produced "approximately 760 pages, and included job descriptions, Plaintiff's personnel file, Plaintiff's weekly timecard submissions, Plaintiff's compensation records, approximately 230 pages of Defendants' employee manuals, policies, and procedures, and information regarding the classification of designers." Id. at 4.

Courts in this Circuit have disagreed over whether to grant precertification discovery or the breadth of the discovery to permit. Compare Da Silva Moore v. Pubicis Groupe, 868 F. Supp. 2d 137 (S.D.N.Y. 2012) (noting discovery should be limited to the named plaintiffs and company policies prior to class certification) with Whitehorn v. Wolfgang's Steakhouse, Inc., 09-CV-1449 (LBS), 2010 WL 2362981, at *2 (S.D.N.Y. June 14, 2010) ("While some district courts have exercised this discretion to deny pre-certification disclosure of contact information, the weight of authority in this district counsels in favor of allowing such disclosures in FLSA cases."). However, whether to grant precertification discovery is entirely within the trial court's discretion. "Given the Supreme Court's direction that 'the broad remedial goal of the [FLSA] should be enforced to the full extent of its terms,' pre-certification discovery is appropriate to enable [the p]laintiff to define the class and identify similarly situated employees." Whitehorn, 2010 WL 2362981, at *2 (quoting Hoffman-La Roche Inc, 493 U.S. at 172). Thus, "[p]re-certification discovery of employee contact information will either enable [the p]laintiff to make a fuller showing at the conditional certification stage, or reveal that the collective action is not suitable for certification." Id. (citation omitted); Fei v. WestLB AG, 07-CV-8785 (HB/FM), 2008 WL 7863592 (S.D.N.Y. April. 23, 2008) ("[C]onditional certification is

not a prerequisite to the turnover of information concerning the identity of potential class members . . . . Indeed, the information that [the plaintiff] seeks will obviously be of considerable help to [the plaintiff] in his efforts to define the class . . . .").

In Charles v. Nationwide Mut. Ins. Co., Inc., a case cited by defendants in their opposition papers, the court denied the plaintiff precertification discovery pursuant to both the FLSA and Fed. R. Civ. P. 23, noting that the plaintiff had not yet moved for class certification and had failed to explain "why there is no alternative means to obtain the necessary information." Charles, 09-CV-94 (ARR), 2010 WL 7132173 (E.D.N.Y. May 27, 2010). Here, however, this case is not one where plaintiff did not attempt to gather relevant information about the potential class prior to filing his preliminary certification. Indeed, plaintiff did not file his motion for conditional certification (Dkt. No. 29) until January 28, 2015, which was after filing a motion to compel (Dkt. No. 34) on January 13, 2015, and attempting to gather discovery about the potential class through the normal course of discovery. Dkt. Nos. 29-2, 29-7, 29-8, 29-10.

The undersigned agrees that the broad discovery plaintiff is requesting is not appropriate at this stage, but finds that plaintiff does have right to certain pre-certification discovery. The undersigned does not share defendants' concern that plaintiff's counsel is requesting discovery of potential plaintiffs merely to identify potential clients. Dk. No. 33, at 12-13. To the extent defendants express concerns regarding the potential plaintiffs' right to privacy, the undersigned finds that plaintiff has a compelling need for discovery and his need for the contact information of these potential plaintiffs outweighs the minimal privacy concerns resulting from the release of names and addresses. See Whitehorn, 2010 WL 2362981, at *3 (noting that courts considering arguments against

-22-

precertification discovery due to privacy concerns weigh the plaintiff's need for discovery against the privacy rights at issue) (citation omitted). Accordingly ,it is recommended that plaintiff's motion to compel be granted in part, insofar as defendants be ordered to provide to plaintiff a list of the names and last known addresses of all structural, mechanical, architectural, and process designers employed by defendants at any of its locations during the period of three years prior to the date of the adoption of this Report-Recommendation and Order.[6]

## III. Conclusion

**WHEREFORE**,

it is **RECOMMENDED** that defendants' motion to strike the de Oliveria declaration (Dkt. No. 40) be **DENIED**; and it is further

**RECOMMENDED** that plaintiff's motion for preliminary certification of this case as a collective action for purposes of the FLSA (Dkt Nos. 34) be **DENIED**, without prejudice and with leave to renew upon the completion of additional limited discovery; and it is further

**RECOMMENDED** that plaintiff's motion to compel discovery (Dkt. No.29) is

_____

[6] Citing to New York Labor law, plaintiff requests that this Court compel defendants to provide the current and former employees in the positions of structural, mechanical, architectural, and electrical designers six years before April 30, 2014, the date the complaint was filed. Dkt. No. 29-11, at 4 n.4. However, plaintiff has not provided the Court with case law demonstrating that the standard for precertification discovery is the same under the FLSA as it is under Rule 23. See Jenkins v. TJX Companies, Inc.. Further, although plaintiff labels his motion to compel as pursuant to the FLSA and Rule 23, his provided case law identifies a difference between permitting precertiifcation pursuant to the FLSA and under Rule 23. See Dkt. No. 41, at 5 (citing Dziennik v. Sealift, Inc., 05-CV-4659 (DLI/MDG), 2006 WL 1455464, at *2 (E.D.N.Y. May 23, 2006) (recognizing that the FLSA has different procedures for potential plaintiffs to opt in than in class actions pursuant to Rule 23 and that FLSA cases allowing for precertification discovery are distinguishable because the statute of limitations continues to run until the potential class member opts in).

**GRANTED IN PART**, insofar as defendants are ordered to turn over to plaintiff, within **THIRTY (30)** days of the adoption of this Report-Recommendation and Order and in a computer-readable data file, the full names and last known addresses of all structural, architectural, mechanical, and electrical designers employed by defendants in the three (3) years prior to the date of the adoption of this Report-Recommendation and Order at all of its locations; and it is further

**RECOMMENDED** that discovery be reopened and the discovery deadline be extended an additional **NINETY (90)** days following the adoption of this Report-Recommendation and Order; and it is further

**RECOMMENDED** that Plaintiff's motion to compel be otherwise **DENIED**; and it is further;

**RECOMMENDED** that, following the completion of discovery, if such provisions are adopted, the Court shall re-set the dispositive motion deadline; and it is further

**ORDERED** that the Clerk of the Court serve parties with a copy of this Report-Recommendation and Order in accordance with local rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Date: May 14, 2015
      Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge